UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENE SANCHEZ,<br><br>        Plaintiff<br><br>v.<br><br>SUPERINTENDENT RIVELLO, *et al.*,<br><br>        Defendants. | CIVIL ACTION NO. 3:24-CV-00870<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Rene Sanchez ("Sanchez"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Superintendent Rivello, Correctional Industry Manager Northrop, and Correctional Foreman Clark. Presently before the Court is Defendants' motion (Doc. 10) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(d), the motion will be treated as one for summary judgment, and disposed of as provided in Rule 56, only with respect to the issue of exhaustion of administrative remedies.[1] The remaining state law claim will be addressed under Rule 12(b). The motion is ripe for resolution and, for the reasons set forth below, the Court will grant Defendants' motion. (Doc. 10).

---

[1] On September 9, 2024, the Court issued an Order apprising the parties that the motion to dismiss would be treated as one for summary judgment with respect to the issue of exhaustion of administrative remedies. (Doc. 14). Because Defendants raised the issue of exhaustion of administrative remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 14).

I.     **BACKGROUND AND PROCEDURAL HISTORY**[2]

At all relevant times, Sanchez was housed at the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"). (Doc. 1). On April 24, 2023, Sanchez was working at his assigned job in the Correctional Industries ("CI") Print Shop. (Doc. 1, at 3). During his shift in the CI Print Shop, Sanchez was sitting by a "wrapping machine" and while standing up, his left hand became entrapped in the machine. (Doc. 1, at 3). Sanchez alleges that the machine lacked an emergency shut-off switch. (Doc. 1, at 3). A fellow inmate allegedly turned the machine off, and Sanchez was able to remove his hand from the machine. (Doc. 1, at 3). As a result, Sanchez alleges that he sustained two major cuts on the middle finger of his left hand. (Doc. 1, at 3). Sanchez wrapped his hand in a towel and Defendant Clark gave him a slip to proceed to the medical department. (Doc. 1, at 3). While walking to medical, Sanchez asserts that he felt dizzy due to loss of blood. (Doc. 1, at 3). A physician's assistant then sent Sanchez to an outside hospital for treatment. (Doc. 1, at 3). At the hospital, Sanchez received 12 stitches on his finger and was allegedly diagnosed with a fractured hand. (Doc. 1, at 3). Sanchez claims that he suffers from permanently damaged tendons. (Doc. 1, at 3).

Sanchez filed a grievance related to this incident. (Doc. 16, at 3 ¶ 10; Doc. 18, at 1). On May 2, 2023, the Facility Grievance Coordinator received grievance number 1031718,

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. LOCAL RULE OF COURT 56.1. Unless otherwise noted, the factual background herein derives from the complaint, the parties' Rule 56.1 statements of material facts, and supporting exhibits. (Doc. 1; Doc. 1-1; Doc. 16; Doc. 16-1; Doc. 18).

wherein Sanchez alleged that he injured his hand at the CI Print Shop on April 24, 2023. (Doc. 1-1, at 2-3; Doc. 16, at 3 ¶ 10; Doc. 16-1, at 14-15; Doc. 18, at 1). On May 15, 2023, Defendant Northrop conducted an initial review response and denied the grievance. (Doc. 1-1, at 4; Doc. 16, at 3 ¶ 13; Doc. 16-1, at 12). Defendant Northrop found that Sanchez was in an unauthorized area of the CI Print Shop that did not pertain to his duties. (Doc. 1-1, at 4; Doc. 16-1, at 12). He explained that Sanchez was assigned to the cutting area of the print shop but, on April 24, 2023, Sanchez went to the shrink wrap area to converse with other inmates. (Doc. 1-1, at 4; Doc. 16-1, at 12). While in this area, Sanchez sat on a table designed to catch the product coming out of the machine. (Doc. 1-1, at 4; Doc. 16-1, at 12). As Sanchez was standing up, he put his hands on the table without first checking the area behind him. (Doc. 1-1, at 4; Doc. 16-1, at 12). In denying the grievance, Defendant Northrop found that the incident could have been avoided if Sanchez was not in an unauthorized area, did not sit on the table, and checked the table area behind him before he placed his hands down. (Doc. 1-1, at 4; Doc. 16-1, at 12). Sanchez contends that he was not in an unauthorized area as inmates are allowed in all areas of the Print Shop. (Doc. 18, at 2 ¶ 13).

Sanchez appealed the denial of the initial review response to the Facility Manager, Defendant Rivello. (Doc. 1-1, at 5; Doc. 16, at 3 ¶ 14; Doc. 16-1, at 9). Upon review, Defendant Rivello upheld the denial of Defendant Northrop's initial response. (Doc. 1-1, at 6-7; Doc. 16, at 4 ¶ 15; Doc. 16-1, at 7-8). Defendant Rivello stated that while Sanchez claims there were no safety managers, signs, or protective machine coverings, Sanchez was in an unauthorized area that was not relevant to his job duties or duties to assist other inmates. (Doc. 1-1, at 6-7; Doc. 16, at 4 ¶ 15; Doc. 16-1, at 7-8). Additionally, Defendant Rivello noted that Sanchez and his work supervisor signed an "Inmate Job Orientation Form" which

3

included safety and operation instructions. (Doc. 1-1, at 6-7; Doc. 16, at 4 ¶ 15; Doc. 16-1, at 7-8). In upholding the denial of grievance number 1031718, Defendant Rivello found that Sanchez's injuries were based upon his own negligence. (Doc. 1-1, at 6-7; Doc. 16, at 4 ¶ 15; Doc. 16-1, at 7-8). Sanchez counters that his injuries were caused by a defective machine that had no warning signs, and the incident would not have occurred if inmates were properly trained on operating the machinery. (Doc. 18, at 2 ¶¶ 15-16).

On June 27, 2023, Sanchez filed a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 1-1, at 7; Doc. 16, at 4 ¶ 17). On August 10, 2023, SOIGA dismissed Sanchez's final appeal because he did not provide the required documentation for a proper appeal, as required by DC-ADM 804. (Doc. 1-1, at 9; Doc. 16, at 4 ¶ 18; Doc. 16-1, at 6). SOIGA specifically noted that Sanchez failed to include a copy of his initial grievance, the initial review response, his appeal to the Facility Manager, and the Facility Manger's response. (Doc. 1-1, at 9; Doc. 16, at 4 ¶ 19; Doc. 16-1, at 6). Sanchez maintains that he "did not know that he had to send copies of the initial review and the Facility Manager[']s response." (Doc. 18, at 2 ¶¶ 17-18).

II.   **LEGAL STANDARDS**

    A.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule

4

12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d

1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must

permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### B. FEDERAL RULE OF CIVIL PROCEDURE 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." LOCAL RULE OF COURT 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

7

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. F ED. R. C IV. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. See *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd.*

*v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**III.   DISCUSSION**

    A.   STATE LAW CLAIM

        **1. Eleventh Amendment and Sovereign Immunity**

Sanchez's state law claim of negligence will be dismissed as to all Defendants, as the individual defendants, in their official capacities, are immune from suit pursuant to the Eleventh Amendment, and all defendants are protected from suit pursuant to the doctrine of sovereign immunity.

Defendants first seek dismissal of Sanchez's state law claim against them in their official capacities. (Doc. 11, at 8). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment bars suits seeking monetary damages against a state and its agencies in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). There is no exception to Eleventh Amendment immunity for plaintiffs who bring state law claims against a state. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 (recognizing that Eleventh Amendment immunity applies to state law claims in addition to federal claims).

Suits against state officials acting in their official capacities are really suits against the employing government agency, in this case the DOC, and, as such, are barred by the Eleventh

Amendment. *A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 PA. CONS. STAT. §§ 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court.[3]

Defendants also submit that the doctrine of sovereign immunity bars Sanchez's negligence claim against state employees. (Doc. 11, at 8-9). As it is beyond dispute that"[t]he Department of Corrections is an agency of the Commonwealth and the Defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity," Defendants are entitled to sovereign immunity with respect to Sanchez's state law claim of negligence. *See McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) *aff'd*, 35 F. App'x 357 (3d Cir. 2002) (not precedential) (citing *Maute v. Frank*, 441 Pa. Super. 401, 402, 657 A.2d 985, 986 (1995) (state prison officials enjoy sovereign immunity); *Robles v. Pennsylvania Dep't of Corrections*, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998) (same)), *aff'd*, 35 F. App'x 357 (3d Cir. 2002) (not precedential). Commonwealth employees are immune from liability for either negligence or intentional torts. *McGrath*, 67 F.Supp.2d at 511-12).

---

[3] To the extent Defendants seek to dismiss any request for prospective declaratory or injunctive relief, based on the Eleventh Amendment, the motion will be **DENIED**. The Eleventh Amendment does not generally bar prospective declaratory or injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief.").

For the foregoing reasons, the Court finds that Defendants are entitled to Eleventh Amendment and sovereign immunity, and the Court will **DISMISS** Sanchez's negligence claim.

B.  CONSTITUTIONAL CLAIMS

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning that plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "An untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement, thereby precluding an action in federal court." *Cameron v. Swartz*, 810 F. App'x 143, 145 (3d Cir. 2020) (not precedential) (citing *Woodford*, 548 U.S. at 84, 90-91; *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. *Jones v. Bock*, 549 U.S. 199, 216 (2007). If the defendants demonstrate that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019) (not precedential) (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (2018)).

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi*, 904 F.3d at 268 (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it

11

operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Rinaldi*, 904 F.3d at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. *See, e.g.*, *Ross*, 578 U.S. at 639-41 ("But aside from [when an administrative procedure is unavailable], the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account.") (citation omitted). An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005) (not precedential). Furthermore, an inmate cannot avoid the exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002) (not precedential). Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003) (not precedential).

Exhaustion of administrative remedies in the DOC is governed by the DOC's grievance policy, DC-ADM 804. Under DC-ADM 804, a prisoner must first submit a written grievance with the Facility Grievance Coordinator within 15 days from the date of the incident. DC-ADM 804 § 1.A.8 (2015), available at https://www.cor.pa.gov/About% 20Us/Documents/DOC% 20Policies/804% 20Inmate% 20Grievances.pdf (last visited Oct. 22, 2024). DC-ADM 804 provides that the grievance must "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)" and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." DC-ADM 804 § 1.A.11. Next, the prisoner must submit a written appeal to an intermediate review level within 15 working days. DC-ADM 804 § 2.A.1.a. Finally, the inmate must submit an appeal to SOIGA within 15 working days. DC-ADM 804 § 2.B.1.b.

While housed at SCI-Huntingdon in 2023, Sanchez filed one relevant grievance—number 1031718. (*See* Doc. 1-1; Doc. 16, at 3 ¶ 10). The history of grievance number 1031718 is as follows.

On May 2, 2023, the facility received grievance number 1031718, wherein Sanchez alleged that he injured his hand in the CI Print Shop. (Doc. 1-1, at 2-3; Doc. 16-1, at 14-15). Initial review of this grievance was conducted on May 15, 2023. (Doc. 1-1, at 4; Doc. 16-1, at 12). The Facility Grievance Officer—Defendant Northrop—denied the grievance. (Doc. 1-1, at 4; Doc. 16-1, at 12). Sanchez appealed the first-level denial to the Facility Manager—

13

Defendant Rivello. (Doc. 1-1, at 5; Doc. 16-1, at 9). Defendant Rivello upheld the Grievance Officer's decision. (Doc. 1-1, at 6-7; Doc. 16-1, at 7-8). Sanchez then appealed to SOIGA. (Doc. 1-1, at 7). On final review, the Chief Grievance Officer dismissed the appeal and found that Sanchez failed to comply with the provisions of DC-ADM 804. (Doc. 1-1, at 9; Doc. 16-1, at 6).

Two conclusions can be drawn from this grievance history. First, Sanchez never identified any of the Defendants in his grievances as committing an act or omission that potentially violated his constitutional rights. Defendant Northrop's only involvement in the grievance process was in his role as Facility Grievance Officer for the initial-level grievance review. Defendant Rivello's only involvement in the grievance process was in his role as superintendent/Facility Manager for the second-level grievance review. Investigating and denying a grievance appeal that alleges inadequate conditions of confinement is not equivalent to being deliberately indifferent to a prisoner's complaints. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (not precedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process"). Sanchez is not excused from administratively exhausting claims against Defendants Northrop and Rivello—as required by the PLRA—simply because, in their respective roles in the grievance process, they denied relief under DC-ADM 804. With respect to Defendant Clark, he was not identified in any way in the prison's grievance review process and is not named in the grievance. Sanchez never exhausted his grievance against Defendants Rivello, Northrop, or Clark.

Second, despite Sanchez's failure to name any of the Defendants in his grievance, he did not properly exhaust his present claim. Sanchez did appeal grievance number 1031718 to SOIGA; however, SOIGA dismissed the final appeal for failure to comply with DC-ADM 804. Sanchez was advised to review DC-ADM 804 to ensure that his grievances fully complied with the provisions of DC-ADM 804. Sanchez failed to cure the deficiencies. Sanchez's grievance was dismissed on procedural grounds. A prisoner's failure to comply with the procedural and substantive requirements of the DOC's grievance policy, as set forth in DC-ADM 804, results in procedural default, thereby precluding an action in federal court. *See* *Woodford*, 548 U.S. at 84, 90-91; *Spruill*, 372 F.3d at 227-32.

As Defendants have provided evidence to support their failure to exhaust defense as to grievance number 1031718, the burden shifts to Sanchez to produce evidence that the DOC grievance remedies were not available to him. Sanchez has failed to meet this burden.

Sanchez responds that he "did not know that he had to send copies of the initial review and the Facility Manager[']s response" to SOIGA. (Doc. 18, at 2 ¶¶ 17-18). He believed that prison officials and grievance officers had access to his grievance documents through institutional computers. (Doc. 17, at 5-6). This argument misses the mark. The DOC's grievance policy consists of three steps. The final step involves an appeal to the SOIGA within 15 working days of the Facility Manager's Appeal Response. A proper appeal to final review must include: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review response/rejection and/or remanded initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision; (5) a written appeal to the

15

SOIGA…" DC-ADM 804 § 2.B.1.j. "[F]ailure to provide any of the documentation noted above may result in the appeal being dismissed." DC-ADM 804 § 2.B.1.j.6.

SOIGA provided specific reasons for rejecting Sanchez's grievance as procedurally defective—Sanchez failed to include a copy of his initial grievance, the initial review response, his appeal to the Facility Manager, and the Facility Manger's response. Sanchez concedes that he did not submit the required documents to SOIGA. Additionally, Sanchez does not allege that the DOC's administrative remedy program was unavailable. He does not allege, for example, that he requested copies of these documents, or that that prison official failed to respond to any such requests for copies. Indeed, along with his complaint, Sanchez submitted copies of his initial grievance, the initial review response, his appeal to the Facility Manager, the Facility Manger's response, his appeal to SOIGA, and the Chief Grievance Officer's response. (Doc. 1-1). It is thus undisputed that Sanchez failed to comply with the listed requirements for filing a proper appeal to final review and, therefore, his appeal was dismissed for failure to comply with DC-ADM 804. Although Sanchez may have filed an appeal to SOIGA, he failed to follow the DOC's procedural rules for filing a final appeal and has not provided any reason to justify this failure. Therefore, he has procedurally defaulted the claims arising from grievance number 1031718. *Woodford*, 548 U.S. at 93; *Spruill*, 372 F.3d at 232.

And, as stated *supra*, to the extent that Sanchez attempts to hold Defendants Northrop and Rivello liable based upon their involvement in the grievance procedure, this claim fails. It is well-established that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992).

Sanchez has not provided any basis to excuse his failure to exhaust administrative remedies. In sum, grievance number 1031718, was not properly exhausted and is procedurally defaulted.

## IV. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Because Sanchez cannot cure the legal defects identified herein, the Court finds that allowing leave to amend would be both inequitable and futile.

## V. CONCLUSION

Consistent with the foregoing, the Court will **GRANT** Defendants' motion. (Doc. 10). Specifically, the Court will **GRANT** Defendants' motion to dismiss the state law claim. The Court will also **GRANT** Defendants' motion and enter judgment in their favor on the constitutional claims based on Sanchez's failure to exhaust the available administrative remedies. An appropriate Order shall issue.

Dated: December 10, 2024   *s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

17